Good morning, Your Honors. Raul Montes for Ms. Magallon-Cardenas. I'd like to reserve a couple of minutes, Your Honor, for rebuttal. I'll deal with the substantive area first. In this case, we have a situation where Ms. Magallon was not the driver or the owner of the car. Therefore, she had no duty to inspect it when she got in. She had no knowledge that the alien was in the car, and there's no evidence of conspiracy. So the only evidence that we're confronted with is inference evidence, Your Honor. First of all, the shoes are not an illegal object. She could have put on the shoes, she could have put on a sweater, and that was not illegal in and of itself. Now, the nonverbal conduct that we, the officers said that caused them to believe that she knew was that at one point she looked down at her shoes, at another point she did not respond to a question regarding about her own shoes, and that in the videotape she raised her voice. Your Honor, all those are mere inferences. From there, that would lead to one has to make the stretch that somehow based on these inferences, there's the additional inference that she knew that the alien was in the car or that somehow she had agreed to this smuggling an illegal alien. And obviously, we don't have any of those situations here. Well, he draws that inference. Oh, no. Go ahead. He draws that inference that she must have known the alien was in the car because when they say where are the illegal alien shoes, she points to her own feet. So he draws the conclusion that she must have known. Isn't that a permissible inference? Well, Your Honor, but it's a very weak one, I would suggest to the Court, because at the time he's doing that, he's gesturing with his hand towards the alien. And what do we have in that situation? The alien is there. She's the only person wearing men's boots without any socks. So, you know, they were in direct view of each other. Now, the question is? Well, that's sort of like, you know, if you're the only one with cookie crumbs on your lips and they ask who ate the cookies. You know, that, I mean, it's a permissible inference. But it's a very weak one. It would be weaker if everyone else had on men's boots. But that's not the case. Well, but the situation is, you know, the fact that nonverbal conduct by her looking down at the shoes. What does that mean? The officer said, well, I took it to mean that she understood that that was him. Well, you seem to make the argument that I think in your opening brief that more than circumstantial evidence is needed. Yes. What, you know, what is your authority for that? Well, we cited the matter at Tuwara, Your Honor, the BIA case. Do you have any other authority for that? Other than that? If that doesn't stand for that proposition, do you have any other authority for that? Not at this point, Your Honor, I believe that that does stand for that proposition, though. Now, what if she had looked up? What if she stood right at the officer? I mean, you know, in this situation, you know, you can still make an argument, the immigration officer, wait a minute, whatever she did, I mean, you know, most persons that are in detention at the port of entry and being charged, and in this case with some type of criminal conduct, alleged criminal conduct, you know, were pretty much probably looking down rather than looking up. But, I mean, same, whether she had looked up to the side or whatever, that could be interpreted, and that's subject to the subjective interpretation of every person. Are you recalling correctly that she did not testify at the hearing? Am I remembering this right? I think you're probably not. She did not testify at the hearing, did she? Yes, she did. She did testify. She was forced to testify by the officer. We objected because the I.J. made her testify. Yes, he did, Your Honor. He called her as a witness. Okay. We objected on the grounds that a Fifth Amendment ground. She was arrested April 4th, 2000. At that point, she invoked a Fifth Amendment right against self-incrimination. She was taken before a Federal magistrate in downtown San Diego, and he dismissed the case. It was a 1324 charge. Then she was brought back to the border, Your Honors, and on April the 7th, she was videotaped in the sworn statement. However, with no indication in the record that she ever waived her invocation of the Fifth Amendment right. Then what happened? The officer summarized the testimony of the videotaped statement and put it in the I-213. And then what happened? When the judge never gave us the opportunity to object to the I-213, he gave the INS attorney an opportunity to object to our evidence, but then he cut it off there and went on. And then what happened? He never admitted the evidence into the record. He states in his opinion that he considered all the evidence. But, Your Honor, it's a clear violation of the Fifth Amendment right. Well, the question remains, well, at that point when she was brought back to the border, she was no longer subject to criminal prosecution. Our argument would be, yes, she was, because when it was dismissed, it wasn't with prejudice. So at any time, she could still have been. She could have been indicted within a year. Go ahead. Yes, that's correct, Your Honor. So, Your Honors, in this case, we have a person with an isolated good faith error in judgment, unsophisticated person. You know, it's foolish, obviously, putting on somebody's shoes. But had she known that they were an alien's shoes, had she known that the alien was in the hidden compartment in the dashboard, had she known many other things, then we could attribute evidence that she knew and that she was involved in an alien smuggling. But the fact that she put on a man's shoes because, and in fact, they even videotaped her, the corns in her feet, because she was having problems with her shoes. So these shoes were bigger size than hers. She puts them on without any socks and then, obviously. But I don't know. But the I.J. says, okay, why would somebody with sore feet sitting in a car put on somebody else's shoes when you're just sitting in the car? That was part of his reasoning, wasn't it? I believe so, Your Honor. Yeah, but they were bigger in size, Your Honor, and she felt comfortable. You know, she put on. She had permission from the driver. And so she put them on and, you know, she felt comfortable at that point. Did she offer an explanation for that or try to answer his concern? Oh, yes, Your Honor. What was her answer to that? Well, basically what I was explaining to the court that, you know, she didn't know that they were any illegal alien's shoes, that they were there, that she just assumed that the driver somehow had left them there and then she asked for permission and put them on. And that's the extent of that, Your Honor. So, Your Honor, in this case, it's obviously that the government, she's a lawful permanent resident alien. The government has the burden of proof to establish by clear, convincing and unequivocal evidence her deportability, her movability. Thank you, Your Honor. That was it. Ms. Gallagher, another question? No, I'm okay. Okay. Thank you. You wanted to reserve two minutes. Thank you. Thank you. Good morning. Good morning, Your Honor. May it please the Court, my name is Jennifer Lightbody and I represent the Respondent. Substantial evidence supports the immigration judge's determination that Petitioner aided, abetted, assisted an alien to attempt to enter the United States without inspection by concealing him in the dashboard in violation of the law. She assisted by wearing his shoes in order to protect or in order to throw the immigration officers off in detecting that there was a third person in the car. In fact, Officer Mitchell had testified at page 22. How, Counselor, does that assist? For God's sakes, I have had more than, you know, I am not one of those people who goes out and has a shoe fetish. But I have work shoes, which I'll leave in the back of the car, and other shoes that I wear. How does wearing somebody else's shoes assist in doing an illegal act? Well, at page 226 of the record, Your Honor, Officer Mitchell stated that, in his experience, that there are people who don't wear shoes in order to fit in these compartments, and that the alien took his shoes off so that he could actually fit in the front of that dashboard. And so as the immigration judge found, he didn't believe that the Petitioner's story, that she put the boots on because she needed this arch support, but that. Yeah, but in the back was another pair of shoes. I mean, that's like, you know, how does wearing a pair of shoes assist? Well, she said she didn't know where her shoes were when Officer Mitchell asked her. And then when he went and retrieved them and brought them back, she said, those aren't my shoes. And so the immigration judge drew an inference from that that she was aiding by wearing those shoes in order to disguise the fact that there was a third person hiding in the compartment of the car, which in Officer Mitchell's experience, that people don't wear shoes so they can fit in the compartment. And in addition, he said he was surprised, actually, that she would be wearing his shoes, but that the wearing of those shoes helped to conceal the fact that there was a third person in that compartment. In addition, I would submit to the Court that the Petitioner was found not credible by the immigration judge, and that's not an issue that the Petitioner has argued either on appeal to the Board or here today. And the immigration judge's finding is supported by substantial evidence. What the Petitioner has done today is essentially quibble with the immigration judge's finding, but that's — but his burden before this Court is to show that the record evidence compels a contrary conclusion. He hasn't pointed to a single bit of evidence in the record which would compel a contrary conclusion. What happened in this case was the officer, who was found credible by the immigration judge, who had never seen the Petitioner at the time that the alien was — the smugglee was removed from the compartment, he'd never seen the Petitioner. He walked into the room with the material witness, the smugglee, and said — or, I'm sorry, before that, actually, he said, where are your shoes? And the smugglee responded, the lady has them. So he takes the smugglee into the second room, and within two seconds, the smugglee points out the Petitioner and says, that's her. He walks over to — Officer Mitchell walks over, says, you know, where are his shoes? She looks down, she unlaces them, and she takes them off. She never says, these shoes belong to the driver. She never says, these are my shoes. She never disputes any of it. She takes the shoes off and returns them to the smugglee. And that's the — But, you know, that proves conclusively that they're his shoes. I'm sorry. I said that proves conclusively that they were the smugglee's shoes. Yes. It doesn't prove that she knew he was in the dashboard. Well, it proves — the immigration judge drew an inference from that and concluded that she had to know, that her story that she didn't know was not credible. Why is that? I mean, why isn't her story credible or plausible? Well, she said, I've never seen this person before. I didn't know anything about this. And when I asked the driver, can I put these shoes on, he said, they're my shoes, yeah, you can put them on. And when they walked into the secondary inspection with the smugglee, he said, that's the lady. He points her out immediately. Within two seconds, they walk over there and he — But she's the only one wearing men's shoes. Well, there was some testimony that, according to the officer, he was really looking at eye level. There were approximately, he said, about half of the room was women, about seven women in the room of, I believe — You mean to say you don't think he would notice another woman wearing combat boots? Well, there was no evidence that there was anyone else in the room wearing those boots. I mean, what the evidence was — I understand that. He went in and said, that's her. And there was no evidence that he was actually looking down to see where the boots were. He was looking at eye level and said — and pointed her out immediately. And the immigration judge drew an inference from that. And even though the petitioner argues that that's not sufficient evidence, in courtrooms across America, criminal defendants are found guilty based on circumstantial evidence. And the immigration judge was permitted to draw that reasonable inference. And, again, the petitioner has not shown compelling evidence that warrants a reversal in this case. What about — he cites, I think, Tawara to stand for the proposition that you can't be, you know, that circumstantial evidence is not enough. And in the government's brief, we point out that the board later clarified that to show that that's not really a bright-line test. And that simply isn't the standard. I mean, it's not the standard that courts use in civil cases or in criminal cases. And I would submit to the court that a higher standard in an immigration case would be inappropriate. And the petitioner — the board clarified, rather, that that was not a bright-line test, that you can't use circumstantial evidence in this — in an immigration case to draw that conclusion. I would also like to point out, there was a 28-J letter submitted by counsel with respect to a Sixth Circuit case called Tipuku. And I would submit to the court that they should not follow that case for three reasons. One, first of all, because it's a Sixth Circuit case and it's not binding precedent. Secondly, the case was wrongfully decided. And thirdly, it was factually distinguishable from this case. In that case, the court found that the petitioner did not violate the alien smuggling statute because the petitioner thought that the alien smugglee could reenter the U.S. lawfully. In this case, however, we have an alien who attempted to conceal someone. And the violation here is not whether the alien had documents to enter the country, but the fact that the alien, she was attempting to help him enter without inspection, which, of course, is in violation of immigration law. Secondly, the court said that it requires something more than just presenting — openly presenting an alien to the border officials. It requires some sort of affirmative act, aside from just being the driver of the car. Well, here, again, she was putting the boots on of the alien in an attempt to conceal the fact that there was a third person in that car, which, again, Officer Mitchell said, an alien hiding in one of those compartments, it's not uncommon for them to take off their boots. She puts them on and throws her shoes in the back in order to help conceal the fact that he's hidden in the dashboard. The court in the Sixth Circuit case goes on to say that to define smuggling as requiring some sort of secreting, some sort of attempt to — smuggling requires some sort of secrecy. But — and they're looking at the caption of smuggling and also defining it by what the dictionary says, but I would submit to the court that that would be incorrect because the statute itself defines what smuggling is. Even if you think of smuggling as secreting, like we do with perhaps drugs, the caption itself is not controlling. It's what the law is within the body of the statute, and it doesn't require secreting. Kagan, I have a question. If the agent said that the passenger without the boots on, but she knew that the person was in the compartment, is that enough to establish smuggling? Well, it would be if the agency said that it was, and that interpretation would be reasonable. That's not the fact of — the facts, obviously, of this case. But it's up to the agency to interpret the statute that it administers. And if that interpretation is reasonable, even if this Court disagrees with it, if it's a reasonable interpretation, it's subject to deference. And I would submit to the Court that the — and particularly in this case, that the agency's interpretation of the aiding and abetting is a reasonable interpretation of the statute. In fact, in the dissent in the Sixth Circuit case, which is some — slightly different from this, the judge said, assistance under the smuggling — if driving is not assistance under the smuggling statute, one is left to wonder what assistance means. And in this case, clearly the immigration judge found that wearing the boots of the smugglee was aiding, abetting, or assisting. And that's a reasonable interpretation, and I would submit to the Court that that's entitled to deference. Even if this Court were to find a different definition, it is a reasonable definition, and that's all that the government at this point needs to show. I would also submit that in our 28-J letter, and I'll wrap up, Judge Reinhard indicated that the government doesn't need to demonstrate that the smuggler actually transported the smugglee, so to the extent that that would answer your question, I think the Court has at least suggested that it doesn't need to be the driver. And I would ask the Court, based on this, to affirm the decision below and dismiss the petition for review. Roberts. Thank you, Your Honor. Now, page 22 of the petition opening brief, footnote 9, the petitioner states, prior to the subject incident, he had never, that's Officer Mitchell, who had prosecuted about 70 compartment cases, he had never encountered somebody wearing the alien shoes. Administrative record, page 226. This is a first for them, Your Honor, and he even states that he was shocked by this, that someone would be wearing the alien shoes. Now, regarding the question by Judge Callahan, if somebody knows an illegal alien is in the car, is that enough to find alias smuggling? A response would be no. Let's say I was at the border. You know, I've crossed the border between Tijuana and San Diego, you know, on occasion. And let's say I had a truck, and somebody jumped in the back of the truck, and the person was undocumented alien. Somehow I knew that fact. He jumped in against my will. If I showed up at the border, is that alien smuggling? No, Your Honor, that's not alien smuggling. I had to show some evidence that somehow that I had knowledge that this person was the illegal alien and that I would pursue to that knowledge that I was, it was, I was doing something to trust that person, that it was some volitional act of my part. If I say to you, I want to smuggle an alien into the United States, and I'm going to keep him in a secret compartment in the dashboard, and you, Mr. Montes, are a prominent lawyer in the San Diego area, if you're sitting as a passenger in my car, people will say, oh, that's Mr. Montes. He's a well-known lawyer in San Diego. We'll get through, and no one will give us a hard time. Wouldn't you be aiding and abetting even though all you're doing is sitting there in the passenger seat? I would agree with the court because that's a tacit agreement. You know, that's something that obviously a person somehow agreed to. In this case, there's no evidence whatsoever to establish that she ever conspired or agreed or somehow was involved in any situation that she was going to, first of all, she had no reason to inspect the car, and there's no evidence that she had made any either direct or tacit type of agreement, Your Honor. Thank you very much. Thank you, Your Honor. Thank you. If I had a case to start, you just submit it.
judges: Silverman, Callahan, Duffy